# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **BEVERLY L. TRUJILLO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **CASE NO.** CIV-14-1121-HE |
| ) | |
| **B3H CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. This is a civil action asserting causes of action for sex and race discrimination and retaliation prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); for race discrimination and retaliation prohibited by 42 U.S.C. § 1981; for age discrimination and retaliation prohibited by the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq*., ("ADEA"); and for disability discrimination and retaliation prohibited by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA").

### II. PARTIES

2. Plaintiff, Beverly L. Trujillo, is an individual citizen and resident of the United States, and resides in Del City, Oklahoma, within the Western District. Plaintiff was employed and discharged from employment by Defendant in the Western District of Oklahoma.

3. Defendant, B3H Corporation, is a foreign for-profit corporation and has its corporate headquarters in Shalimar, Florida, and its principal place of business in a state other than Oklahoma.

### III. JURISDICTION AND VENUE

4. This Court has federal question jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. §2000e-5(f)(3), 29 U.S.C. § 626(c) and § 216(b), and 42 U.S.C. § 12117(a).

5. Venue is proper under 29 U.S.C. § 216(b), 42 U.S.C. § 2000e-5(f)(3) and § 12117(a), and 28 U.S.C. § 1391(b) and (c).

### IV. CONDITIONS PRECEDENT

6. On or about March 6, 2014, Plaintiff timely filed a letter charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging, inter alia, that Defendant discriminated against her based upon her sex, race, age, and disability, and retaliated against her. Plaintiff has exhausted her administrative remedies as to her sex, race, age, disability, and retaliation claims. Plaintiff's letter charge was subsequently perfected on an EEOC Form 5, Charge of Discrimination.

7. The EEOC issued Plaintiff a notice of right to sue dated July 15, 2014, and she is filing this lawsuit within ninety (90) days of her receipt of said notice.

### V. FACTUAL ALLEGATIONS

8. Defendant has facilities and business operations in numerous states within the United States. Defendant provides services to United States governmental agencies,

including, without limitation, the Department of Defense. Defendant is an employer engaged in interstate commerce or activities affecting interstate commerce, and has had twenty (20) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

9. Defendant is a covered employer under Title VII, the ADEA, and the ADA because of the number of its employees during the relevant statutory time periods and because of its business operations in interstate commerce.

10. Plaintiff is a whhite female whose year of birth is 1952, and who was 61 years of age at the time of her discharge by Defendant. Plaintiff is disabled, has a record of disability, and/or was perceived as being disabled by Defendant due to a fused spine as a result of corrective surgery for scoliosis caused by polio, and a heart condition. During Plaintiff's employment with Defendant, she was not able to stand for more than fifteen minutes without support, and had to lean forward when she walked. She was limited in standing, walking, bending, and lifting.

11. Plaintiff was employed by Defendant as a Senior Software Analyst on or about October 16, 2013. Plaintiff's responsibilities included correcting database errors, assisting customers with questions, and performing other assigned duties.

12. Plaintiff was discharged by Defendant on or about January 16, 2014.

13. Plaintiff was qualified to perform the duties of Senior Software Analyst based upon her education and prior work experience.

14. After her discharge, Plaintiff's former job duties were assigned to one or

more significantly non-white, younger, male, and/or non-disabled employees; and/or Plaintiff was discharged under circumstances in which non-white, younger, male, and/or non-disabled employees would not have been.

15.   Plaintiff was employed by Defendant to work at Tinker Air Force Base, which is located within the Western District. While employed, Plaintiff was continuously subjected to discriminatory treatment because of race, gender, age, and disability, and retaliated against, including, without limitation, being subjected to a hostile work environment, derogatory comments, different terms and conditions of employment, denial of training, over-scrutiny of her work performance, unequal discipline, and discharge.

16.   Beginning on or about October 21, 2013, and continuously thereafter, Plaintiff was subjected to discrimination and a hostile work environment by Larry Moore, a federal government employee working for the U. S. Air Force at Tinker Air Force Base. Larry Moore (black) reported to Valerie Washington (black), who was the Supervisor of 72ABW/SCPD. On or about October 21, 2013, Moore told Plaintiff he was not going to train her anymore and assigned her to Patricia Smith, another white female, age 62. Thereafter, Moore made derogatory comments to Plaintiff because of her gender, race, age, and disability.

17.   On or about October 25, 2013, Moore came to Plaintiff's desk and said she walked like a man. She had a fused spine and had to lean forward when she walked. Moore was aware of her disability.

18.   On or about November 15, 2013, Moore told Plaintiff that her skirt was

too short and to be careful because she might show her "monkey". Also in November, Moore called Plaintiff in to a break room for a private meeting, and told her she was not learning because she was too "thick" and that he would call her a "nigger" if he could.

19. In December 2013, Moore called Plaintiff to his desk to show her a work task, and while she was there, he asked her why she was wearing her ring on her left finger and stated that she must be a lesbian. He then asked her if she had ever been with a woman and said she should try it. Plaintiff asked Moore to stop, but he persisted in engaging in the conversation which others in the office could hear.

20. At another time in December, Moore summoned her to his desk where he pointed to a picture of Jamie Curtis, the actress, on his computer. She was on a bed with her legs apart, wearing a thong but no bra. Plaintiff told Moore that was porn and walked away.

21. On another occasion in December, Moore said he had seen Plaintiff the day before with her makeup off, and that she had really bad skin and looked "scary". He also asked her if she was cross-eyed. These comments were made loudly so that other members of the office staff could hear them and cause humiliation to Plaintiff.

22. On several occasions, Moore also called Plaintiff "thick" and "stupid". He also stopped Plaintiff while she was walking past his desk and told her a fellow employee, a white woman about 45 years old, had a nickname on her nameplate that meant something bad. Moore asked Plaintiff if she knew what the nickname meant and she said, "No", and that she did not want to know. Moore persisted and pointed to his

computer, where he had looked it up. According to Moore, the nickname meant "great tasting pussy".

23. On December 16, 2013, Plaintiff complained to Valerie Washington, Moore's supervisor, about his sexual harassment and other comments creating a hostile work environment. Thereafter, Plaintiff saw Moore go into Washington's office and shut the door.

24. Plaintiff also complained to representatives of Defendant, B3H Corporation. She communicated with Richard Webster, Vice President, and Glenda Mlady, a manager for Defendant. She advised them of the sexual harassment and discrimination by Moore, and requested their assistance to stop the harassment and discrimination.

25. On December 17, 2013, Plaintiff attended a meeting with Wilbur Walker, Pat Smith, Moore, and Washington. As the meeting was coming to a close, Washington asked if there was anything further. Moore stated he had an issue. He told the group that Plaintiff was not trainable and that he wanted her fired. Washington then asked the employees to leave except for Moore and Plaintiff. Washington asked Plaintiff what she had to say. Plaintiff denied the accusations that she was not trainable and did not appreciate Moore's comments. Moore continued to make derogatory remarks about her, and she stated that she had other recourse regarding his rude and sexual comments. Washington then stated she could not talk to Plaintiff anymore and asked her if she was going to file a lawsuit. Plaintiff informed Washington that she was considering doing so.

26. From December 17, 2013, until January 16, 2014, Plaintiff received no further

training. On January 16, 2014, she was discharged from her job and was told it was because she was "untrainable" and had sexually harassed Moore.

27. Defendant has written policies and procedures prohibiting discrimination based upon impermissible factors, including, without limitation, race, gender, age, disability, and retaliation. Plaintiff specifically complained about harassment, a hostile work environment, discrimination, and retaliation to management representatives of Defendant, i.e., Webster and Mlady, but no appropriate corrective action was taken. Instead, the adverse action continued and Plaintiff was discharged. Therefore, all adverse actions described herein, and taken by Defendant against Plaintiff, including without limitation, her discharge, were done intentionally, willfully, or in reckless disregard for the legal rights of Plaintiff.

28. Plaintiff's annual salary from Defendant was approximately $55,000 per year. In addition, she would have received fringe benefits, such as matching 401(k) plan and insurance. As a result of Defendant's wrongful actions, Plaintiff has suffered a loss of employment; loss of career path and seniority; loss of compensation and benefits; and compensatory damages, including, without limitation, those for humiliation, embarrassment, loss of dignity, loss of enjoyment of life, stress, and worry.

## VI.  FIRST COUNT: VIOLATION OF TITLE VII

29. Plaintiff incorporates hereunder by reference paragraphs 1-28, as set forth above.

30. Plaintiff is protected under Title VII from employment discrimination based upon her race, sex and/or retaliation.

31. Defendant discriminated against Plaintiff because of her race and sex, and retaliated against her because she opposed such discrimination by taking the adverse actions described above in ¶¶ 16-26, including, without limitation, terminating her from employment. As a result of the adverse actions by Defendant, Plaintiff suffered the losses and damages described in ¶ 28, above.

32. The actions of Defendant in violating Title VII were intentional, willful, malicious, or in reckless disregard for Plaintiff's rights thereunder, as set forth in ¶ 27, above.

33. Plaintiff is entitled to all remedies and relief provided for a violation of Title VII, including without limitation, back pay, front pay, compensatory damages, and punitive damages.

### VII. SECOND COUNT: VIOLATION OF SECTION 1981

34. Plaintiff incorporates hereunder by reference paragraphs 1-33, as set forth above.

35. Plaintiff is protected under Section 1981from employment discrimination based upon her race and/or retaliation.

36. Defendant discriminated against Plaintiff because of her race, and retaliated against her because she opposed such discrimination by taking the adverse

actions described above in ¶¶ 16-26, including, without limitation, terminating her from employment. As a result of the adverse actions by Defendant, Plaintiff suffered the losses and damages described in ¶ 28, above.

37. The actions of Defendant in violating Section 1981 were intentional, willful, malicious, or in reckless disregard for Plaintiff's rights thereunder, as set forth in ¶ 27, above.

38. Plaintiff is entitled to all remedies and relief provided for a violation of Section 1981, including without limitation, back pay, front pay, compensatory damages, and punitive damages.

## VIII. THIRD COUNT: VIOLATION OF THE ADEA

39. Plaintiff incorporates hereunder by reference paragraphs 1-38, as set forth above.

40. Plaintiff was over age 40 at the time she was subjected to the discriminatory treatment, including discharge, described in ¶ 16-26, above.

41. Plaintiff was fully qualified to perform her assigned job duties and did so in a satisfactory manner.

42. Plaintiff's job duties were assigned to one or more significantly younger employees after her discharge, and/or younger similarly situated employees were treated more favorably than Plaintiff in regard to all terms and conditions of employment and discipline, including termination.

43. A determining factor in all of Defendant's adverse actions toward Plaintiff,

9

including her discharge, was her age and/or retaliation because she opposed such discrimination, in violation of the ADEA. As a result of Defendant's adverse actions, Plaintiff suffered the losses and damages described in ¶ 28, above.

44. Defendant's violations of the ADEA were intentional, willful, malicious, or in reckless disregard for Plaintiff's rights thereunder, as set forth in ¶ 27, above.

45. As a result, Plaintiff is entitled to all remedies and relief afforded by the ADEA, including, without limitation, back pay, front pay, and liquidated damages.

### IX.  FOURTH COUNT: VIOLATION OF THE ADA

46. Plaintiff incorporates hereunder by reference paragraphs 1-45, as set forth above.

47. Plaintiff is protected under the ADA from employment discrimination based upon her disability.

48. Defendant discriminated against Plaintiff by taking the adverse actions against her described above in ¶¶ 16-26, including, without limitation, terminating her from employment because of her disability, record of disability, or Defendant's perception that she is disabled, and/or in retaliation because she opposed such discrimination, in violation of the ADA. As a result of Defendant's adverse actions, Plaintiff suffered the losses and damages described in ¶ 28, above.

49. Defendant's actions in violating the ADA were intentional, willful, malicious, or in reckless disregard for Plaintiff's rights thereunder, as set forth in ¶ 27,

above.

50.	Plaintiff is entitled to all remedies and relief provided for a violation of the ADA, including, without limitation, back pay, front pay, compensatory damages, and punitive damages.

## X.  JURY TRIAL REQUESTED

51.	Plaintiff is entitled to a jury trial under Title VII, Section 1981, the ADEA, and the ADA, and hereby requests a jury trial.

## XI.  PRAYER FOR RELIEF

52.	Plaintiff prays for judgment as follows:

　　A.	Payment of back wages, benefits, and compensation;

　　B.	Reinstatement to her former job position, or alternatively, appropriate future pay, including all wages, benefits and compensation;

　　C.	All other compensatory damages, including, but not limited to, those for humiliation, loss of dignity, stress, and loss of enjoyment of life;

　　D.	Liquidated damages;

　　E.	Punitive or exemplary damages;

　　F.	Declaratory and injunctive relief as appropriate;

　　G.	Pre-judgment and post-judgment interest; and,

　　H.	Attorney's fees, costs and such other and further relief as the Court deems reasonable and proper.

                                        s/Raymond C. Durbin
                                        OBA No. 2554
                                        601 N.W. 13th Street
                                        Oklahoma City, OK 73103-2213
                                        Telephone:    (405) 521-0577
                                        Fax:             (405) 525-0528
                                        E-mail:       durbinlaw@flash.net

                                        ATTORNEY FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED.**

**JURY TRIAL DEMANDED.**